IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| LAMAR and CINDY THOMAS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NUMBER |
| | ) | 3:07-cv-00955-MEF-SRW |
| STATE FARM FIRE AND | ) | |
| CASUALTY COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION TO REMAND

Come now Lamar and Cindy Thomas and, pursuant to 28 U.S.C. § 1447(c), move this Court to remand the above-styled matter to the Circuit Court of Chambers County, Alabama. The absence of removal jurisdiction mandates the requested remand. As specific grounds, the Thomases state as follows:

### Complaint

1.    On September 19, 2007, in the Circuit Court of Chambers County, Alabama, the Thomases filed a complaint in which the named party-defendants were State Farm Fire and Casualty Company ("State Farm") and Donny Holley.

2.    The Thomases asserted that they were Alabama residents.  *Complaint* ¶¶ 1-2.  The Thomases alleged that Holley was "an agent, representative and employee of State Farm" and was an Alabama resident.  *Complaint* ¶ 4.

3.    The Thomases further factually alleged (1) that Holley procured a State Farm homeowners-insurance policy covering the Thomases' real property in Valley, Alabama; (2) that, on April 19, 2006, the Thomases' home "was damaged by wind and hail;" (3) that a State Farm adjuster informed the Thomases that the roof damage "could be fixed with patching only" and "refused to pay for the true cost of repairs;" (4) that the Thomases obtained several estimates for repairing the damage and submitted those estimates to the adjustor; and (5) that, "the adjuster denied any further responsibility on the part of State Farm to pay" the claim.  *Complaint* ¶¶ 6-11.

4.    Against State Farm, the Thomases asserted a breach-of-contract cause of action and a bad-faith cause of action.  *Complaint* ¶¶ 14-16.

5.    In a separate count, the Thomases asserted a claim for negligent or wanton failure to procure desired insurance coverage.  *Complaint* ¶ 17.  Relevant to this cause of action were the factual allegations that State Farm engaged in "a pattern and practice of underpaying or denying valid claims as a cost saving measures" and in "a pattern and practice to victimize other similarly situated individuals in the same manner."  *Complaint* ¶¶ 12-13.

6.    In the complaint, while the Thomases sought both compensatory damages and punitive damages, they requested no specific amounts as to either. *Complaint* at 4.

Notice of Removal

7.    On October 23, 2007, State Farm and Holley jointly filed a notice of removal.   Because State Farm asserted that Holley is a fraudulently joined defendant, Holley did not need join in or consent to the removal and plaintiff will proceed as if the sole removing defendant is State Farm.

8.    As the source of federal subject-matter jurisdiction, State Farm referenced only diversity-of-citizenship jurisdiction pursuant to 28 U.S.C. § 1332. *Notice of Removal* ¶¶ 6, 8 & 14.

9.    State Farm contended that Holley "was fraudulently joined to this action.  *Notice of Removal* ¶ 3.  In support of this contention, State Farm and Holley relied on Holley's contemporaneously filed motion to dismiss.

10.    State Farm further contended "that there is a sufficient basis that the jurisdictional amount in controversy could possibly be met."  *Notice of Removal* ¶ 8. As part of this contention, State Farm wrote:

> ... A copy of a recent judgment from the same county with the same attorney for the plaintiff, the same defense attorney and State Farm Life Insurance Company is attached as Exhibit "D."  This judgment cl early shows

a compensatory award well under the jurisdictional amount, when combined with punitive damages in Chambers County, Alabama, can and most likely will result in an amount which far exceeds $75,000.

If the above is reviewed *in toto*, Defendants avers [sic] that they have met the evidentiary burden set forth in *Lowe's [OK'd Used Cars, Inc. v. Acceptance, Ins. Co.*, 995 F. Supp. 1388, 1389 (M.D. Ala. 1998),] requiring that a "defendant may only establish removal jurisdiction by showing to a 'legal certainty that the plaintiff would not recover less than the federal jurisdictional amount if the plaintiff prevailed.'" *Id.* at 1389.

*Complaint* ¶¶ 11-12.

11.    The referenced "Exhibit D" is a single-page "Order on Post-Trial Motions" entered in a matter styled *George Alford v. State Farm Insurance Corporation and Donny Holley*, Civil Action No. CV-01-207 (Ala. Cir. Ct., Chambers County, Ala. Jan. 12, 2006).  In said order, it is clearly stated that the lawsuit was commenced on August 23, 2001; that claims of breach of contract, conversion, and suppression were asserted in the complaint; and that only the suppression claim was submitted to the jury.  State Farm offered no additional information regarding the *Alford* lawsuit.

## General Legal Principles

12.    Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

13.    Removal statutes must be strictly construed because C ongressional intent in enacting removal legislation was to restrict removal jurisdiction. *Shamrock Oil & Gas Corp. v. Streets*, 313 U.S. 100, 108, 61 S. Ct. 868, 85 L. Ed. 2d 1214 (1921); *Lane v. Champion Internat'l Corp.*, 827 F. Supp. 701, 705 (S.D. Ala. 1993).

14.    Because federal removal jurisdiction is very limited, the remanding of a removed case is favored where the existence of federal subject -matter jurisdiction is not absolutely clear. *Burns v. Windsor Ins. Co.*, 31 F.3d at 1095. *See also Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040 (11th Cir. 2001) (Because removal statutes must be construed narrowly, "all uncertainties as to removal jurisdiction are to be resolved in favor of remand." 264 F.3d at 1050 (citing *Burns*)). "A presumption in favor of remand is necessary because if a federal court reaches the merits of a pending motion in a removed case where subject-matter jurisdiction may be lacking it deprives a state court of its right under the Constitution to resolve controversies in it s own courts." *Klempner v.*

*Northwestern Mut. Ins. Co.*, 196 F. Supp. 2d 1233, 1237 (S.D. Fla. 2001)(citations omitted).

15.    The removing party bears the burden of demonstrating the existence of federal jurisdiction. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S. Ct. 35, 660 L. Ed. 2d 144 (1921); *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002).

## Failure to Satisfy Jurisdictional-Threshold Amount

16.    A federal district court "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States." 28 U.S.C. § 1332(a).  There can be no diversity-of-citizenship-based subject-matter jurisdiction absent satisfaction of the $75,000 threshold amount.

17.    In the notice of removal, State Farm made no mention of the opinion in *Lowery v. Alabama Power Co.*, 483 F.3d 1184 (11th Cir. 2007), and its impact of the issue of a removing party's satisfying the jurisdictional-threshold amount. State Farm made no mention of opinions that have applied *Lowery* in factual scenarios similar to that in the present matter and granted motions to remand due to a failure to meet the burden of proving satisfaction of the jurisdictional-amount threshold.

18.    In *Ellis Motor Cars, Inc. v. Westport Ins. Corp.*, No. 2:07-cv-20-WKW, 2007 WL 1991573 (M.D. Ala. Jul. 5, 2007), vehicles on the plaintiff's dealership lot sustained hail damage.  In response to Ellis Motor Cars' submitted claim, Westport paid the dealership $154,000.  Because it believed that the actually due benefits exceeded $154,000, the dealership filed a complaint in the Circuit Court of Montgomery County, Alabama, asserting claims of breach of contract, fraudulent misrepresentation, ne gligence and wantonness and seeking unspecified compensatory damages and punitive damages.

19.    The district court judge determined that it "must determine the propriety of removal on the basis of the 'limited universe of evidence available when the motion to remand is filed' in accordance with the scheme set forth in 28 U.S.C. § 1446(b) and § 1447(c)."  2007 WL 1991573 at * 1 (quoting *Lowery*, 483 F.3d at 1213-14).  In *Lowery*, the Eleventh Circuit wrote:  "If the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction.  If not, the court must remand.  Under this approach, jurisdiction is either evident from the removing documents or remand is appropriate."  483 F .3d at 1211.

20.    The district court judge observed that, in its complaint, Ellis Motor Cars sought "'*full* compensation for the damages to [the] automobiles.'"  2007 WL 1991573 at * 2 (quoting the complaint; emphasis added by court).  The district

court judge further observed that "[t]he amount of full compensation that the plaintiff seeks is nowhere stated on the face of the removal documents nor is there a hint as to the value of the claim." *Id*. The removing parties proffered no evidence as to how much more than $154,000 the dealership thought that it was entitled to under the subject policy. The district court judge noted that, "[u]nder *Lowery*, districts courts are no longer able to 'speculate in an attempt to make up for the notice's failings.'" *Id*. (quoting *Lowery*, 483 F.3d at 1215). The district court judge decided that he was barred from speculating that the dealership desired $75,000 or more in additional benefits or compensation for the damage to the vehicles because "[t]o do so would reduce the defe ndants' burden of establishing the amount in controversy by a preponderance of the evidence to an ambiguous suggestion of the jurisdictional amount." *Id*.

21.     In *Carswell v. Sears, Roebuck & Co.*, No. 2:06-cv-01098-WKW, 2007 WL 1697003 (M.D. Ala. Jun. 12, 2007), Sally Carswell was injured while shopping at a Sears store when a glass shelf fell on her. In the Circuit Court of Montgomery County, Alabama, she and her husband filed a complaint seeking unspecified damages for personal injuries and loss of consortium .

22.     Sears sought to establish satisfaction of the jurisdictional -amount threshold by relying on the awards in prior similar cases. The district court judge held that "Sears' device for supplying an otherwise unspecified claim for damages

is no longer allowed in the Eleventh Circuit." 2007 WL 1697003 at * 1 (citing

*Lowery*). The district court judge wrote:

> The *Lowery* court explains why outside evidence
> of jury verdicts from other tort cases is insufficient:
>
> > As such, the evidence is not of the sort
> > contemplated by § 1446(b) .... [W]e question
> > whether such general evidence is ever of much use
> > in establishing the value of claims in any one
> > particular suit .... [T]he facts regarding other cases
> > tell us nothing about the value of the claims in this
> > lawsuit .... [W]e cannot possibly ascertain how
> > similar the current action is to those the defendants
> > cite.
>
> [*Lowery*, 483 F.3d] at 1221.

2007 WL 1697003 at * 1 n.2. The district court judge further wrote: "District

courts in this circuit are no longer able to 'sp eculate in an attempt to make up for

the notice's failings,' nor are courts able to consider "evidence regarding the value

of other tort claims."" 2007 WL 1697003 at * 1 (quoting *Lowery*, 483 F.3d at

1214-15 & 1221).

23.     In the present matter, as in *Ellis Motor Cars*, the removing defendants

proffered no evidence of the amount of insurance benefits being sought. This

Court knows only that the Thomases sustained some damage to the roof on their

home and that State Farm refused to pay their submitted estimate or estimates of

the cost of repairing the damage. State Farm did not submit copies of the estimates

referenced in the complaint. This Court can only speculate as to what amount  the

Thomases claimed and State Farm refused to pay. Pursuant to *Lowery*, this Court is barred from engaging in such speculation and must find that State Farm failed to satisfy its burden.

24.    In the present matter, as in *Carswell*, the removing defendant seeks to rely on the result in a prior litigation. In fact, State Farm seeks to rel y solely on the result in a single prior litigation. After *Lowery*, the results in prior litigations are meaningless in satisfying the burden of showing that the amount in controversy is $75,000 or more.

25.    Moreover, even if the referenced prior litigation co uld have any evidentiary significance, State Farm utterly failed to demonstrate any significant similarity between the *Alford* case and the present matter. In *Alford*, State Farm Insurance Corporation and not State Farm Fire & Casualty Company was the defendant insurer. The verdict was entered based on a suppression claim; breach - of-contract and bad-faith claims were not submitted to the jury. Plaintiff would inform this Court that an examination of the *Alford* case would reveal (1) that the subject policy was a life-insurance policy, (2) that Alford contended that he was falsely told that the premium-return value of the policy was $20,000, and (3) that Alford alleged that he detrimentally relied on the represented premium-return value. The *Alford* case is far too factually distinguishable from the present matter to afford any basis for assessing the amount in controversy in the present matter.

26.    In summation, State Farm proffered no evidence to show that the amount in controversy is $75,000 or more.  State Far m asks this Court to speculate, something that this Court is prohibited from doing.   Specifically, State Farm provided this Court with no evidence for determining how much  the Thomases sought to repair the damage to his roof, leaving this Court to speculat e whether he is seeking a few thousand dollars or tens of thousand dollars.   A remand is mandated due to State Farm's failure to proffer any evidence to support its bold assertion that it is possible that the jurisdictional -amount threshold may be met.

Fraudulent-Joinder Question

27.    Because a remand is mandated due to the failure to prove satisfaction of the jurisdictional -amount threshold, the Thomases do not have to address the assertion that Holley was fraudulently joined as party -defendant.   Yet, the Thomases will briefly address this assertion.

28.    The removing party has the burden of proving any asserted fraudulent joinder.  *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997).  A claim of fraudulent joinder must be supported by clear and convincing eviden ce.  *Parks v. New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962), *cert. denied*, 376 U.S. 949, 84 S. Ct. 964, 11 L. Ed. 2d 969 (1964).

29.     In determining whether a colorable claim is asserted against a non - diverse defendant, the court must "evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." *Pacheo de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). "[I]f there is even a possibility that [a] state court would find that the complaint states a cause of action against any ... resident defendant, [a federal court must] find that the joinder was proper and remand [the] case to state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)(emphasis in original). The "jurisdictional inquiry [in addressing an assertion of fraudulent joinder] 'must not subsume substantive determination.' ... When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Crowe*, 113 F.3d at 1538 (citation omitted).

30.     In *Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278 (11th Cir. 2006), the Eleventh Circuit clearly chastised a district court judge for overstepping "the scrupulous respect for the institutional equilibrium between the federal and state judiciaries that our federal system demands." 454 F.3d at 1284. This

institutional equilibrium mandates deference to a state court in deciding if a non-diverse defendant has been fraudulently joined because, under the applicable state law, no viable cause of action has been or can be asserted against such non-diverse defendant. While a federal district judge is capable of interpreting and applyi ng Alabama law, under the principles governing removal jurisdiction, a federal district judge must refrain from doing so unless there is clear and convincing evidence that that there is no possibility that a state court judge might find that a colorable cl aim has been asserted against the non-diverse defendant.

31.    In the notice of removal, State Farm devoted but a single paragraph to their allegation that Holley has been fraudulently joined as a party-defendant and incorporated by reference Holley's contempora neously filed motion to dismiss. In his motion to dismiss, Holley argued that, in addressing his request for a Rule 12(b)(6)-based dismissal, this Court would have to apply the new standard, namely a standard found in *Bell Atlantic v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955, 167 L. Ed. 2d 929, 2007 WL 1461066 (2007).

32.    State Farm proffered no legal authority that the Supreme Court of Alabama has adopted any new standard or the *Twombly* standard that an Alabama circuit court must apply in ruling on a Rule 12(b) (6)-based motion to dismiss. With regard to a federal removal jurisdiction, the question is not how a federal district court would rule on the non-diverse defendant's motion to dismiss but,

instead, is how a state court would rule on the non-diverse defendant's motion to dismiss. This Court is restricted to assessing whether State Farm can show with clear and convincing evidence that there is no possibility that a state court would deny Holley's request for a Rule 12(b)(6)-based dismissal.

33.    Attached hereto and marked as "Plaintiff's Exhibit A" is a copy of a pleading titled "Defendants State Farm Fire & Casualty Company and Mike Spear's Motion for Judgment on the Pleadings" that was filed in a matter styled *Robert and Theresa Hodge v. State Farm Fire & Casualty Company, Mike Spear, et al.*, Civil Action No. CV-06-93 (Ala. Cir. Ct., Chambers County, Ala.). The *Hodge* case was brought in the same county as the present matter. Spear, like Holley, was a State Farm agent and sold a State Farm homeowners-insurance policy to the Hodges. The *Hodge* lawsuit arose when, like in the present matter, there was storm-caused damage to the insureds' residence and State Farm refused to pay the amount of benefits sought. The Hodges asserted a negligent-failure-to-procure claim against the agent. State Farm and Spear requested a judgment on the pleadings as to the asserted negligent-procurement claim. They argued that the "claim for negligent procurement is based on [the] allegations that the policy which was provided by State Farm did not provide coverage for [the] dwelling and personal property for damage caused by wind" but, "as evidenced by the policy itself, [the] policy [did] in fact provide coverage for wind damage." This is the

same argument now made by State Farm in contending that Holley was fraudulently joined and by Holley in contending that no viable cause of action can be asserted against him.

34.    Attached hereto and marked as "Plaintiff's Exhibit B" is the Hodges' opposing memorandum brief.

35.    Attached hereto and marked as "Plaintiff's Exhibit C" is the state court's **denial** of the motion for a judgment on the pleadings. Clearly, the state court judge found that a viable failure-to-procure claim had been asserted by the Hodges against State Farm and Spear, the selling agent. This denial evinces the possibility, if not probability, that an Alabama circuit judge would deny Holley's Rule 12(b)(6)-based motion to dismiss.

36.    In summation, State Farm fails to demonstrate by clear and convincing evidence that an Alabama circuit judge would find that the Thomases have not or cannot assert a viable cause of action against Holley based on the factual allegations contained in the complaint. Therefore, a remand is mandated.

<u>Concluding Remarks</u>

37.    State Farm ignored the current applicable law regarding a removing party proving satisfaction of the jurisdictional-amount threshold. State Farm proffered no supporting evidence and simply asked this Court to speculate as to the

amount in controversy. In addition, State Farm relied solely on t he result in a clearly factually distinguishable lawsuit involving a "sister" company, a life insurance policy, and a suppression claim. State Farm endeavored only to argue why this Court might grant Holley's motion to dismiss but ignored its obligation t o show by clear and convincing evidence that an Alabama circuit court would have to deny a motion to dismiss filed by Holley. State Farm failed to demonstrate the existence of diversity-of-citizenship-based subject-matter jurisdiction and failed to demonstrate the existence of any removal jurisdiction. A remand is mandated.

38.    The Thomases reserve the right to file a supporting memorandum brief or a brief in response to any brief State Farm files in opposition to this motion to remand.

WHEREFORE, Lamar and Cindy Thomas move this Court to enter an order remanding this matter to the Circuit Court of Chambers County, Alabama.

Respectfully submitted,

s/ **David J. Hodge**
Bar Number: ASB-5583-L73C
Of Counsel for Plaintiff
Pittman, Dutton, Kirby & Hellums, P.C.
2001 Park Place North
1100 Park Place Tower
Birmingham, Alabama 35203
(205) 322-8880
(205) 328-2711 facsimile
Email: PDKH-efiling@pdkhlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on **6th** day of **November, 2007**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

**s/ David J. Hodge**
Of Counsel

IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

ROBERT and THERESA HODGE,               )
                                        )
        Plaintiffs,                     )
                                        )
vs.                                     )    Case No. CV-06-93
STATE FARM FIRE & CASUALTY              )
COMPANY, MIKE SPEAR, et al.,            )
                                        )
        Defendants.                     ) -

## DEFENDANTS STATE FARM FIRE & CASUALTY COMPANY AND MIKE SPEAR'S MOTION FOR JUDGMENT ON THE PLEADINGS

COME NOW Defendants, State Farm Fire & Casualty Company (hereinafter "State Farm") and Mike Spear (hereinafter "Spear"), and file this Motion for Judgment on the Pleadings pursuant to ALABAMA RULES OF CIVIL PROCEDURE 12(c).  In support of said motion, Defendant Spear states the following:

## I. INTRODUCTION

Plaintiffs' Complaint arises from their submission of an insurance claim to State Farm regarding alleged wind damage to their home on or about August 22, 2005. (Plaintiffs' Complaint and First Amendment to Complaint).  Plaintiffs' Complaint alleges breach of contract and bad faith against State Farm and negligent procurement against both State Farm and Spear.  As will be demonstrated herein, Count III of Plaintiffs' Complaint is due to be dismissed as a matter of law.

## II. STANDARD OF REVIEW

ALABAMA RULES OF CIVIL PROCEDURE 12(c) allows any party to move for judgment on the pleadings.  The purpose of Rule 12(c) is to dispose "of a case when the material facts are not in



dispute." *Willis v. Shadow Lawn Memorial Park*, 709 So.2d 1241, 1242 (Ala.Civ.App. 1998).

When a party files a motion for judgment of the pleadings,

> the trial court reviews the pleadings filed in the case and, if the pleadings show that no genuine issue of material fact is presented, the trial court will enter a judgment for the party entitled to a judgment according to the law.

*Id.* at 1242. A certified copy of the subject policy referenced in Plaintiffs' Complaint is attached hereto as **Exhibit A.** The policy, being "integral" to Plaintiffs' claims, may be considered by the Court without converting this motion into a motion for summary judgment. *See Deerman v. Federal Home Loan Mortgage Corp.*, 955 F. Supp. 1393, 1397 (N. D. Ala.1997).

## III.  ARGUMENT

Count III of Plaintiffs' Complaint alleges Defendants State Farm and Spear breached a duty to fairly and adequately procure insurance on behalf of the Plaintiffs. (Plaintiffs' Complaint, ¶ 12). However, on its face, Plaintiffs' Complaint and Plaintiffs' First Amended Complaint are void of any genuine issue of material fact as to their negligent procurement claim.

In Count III of Plaintiffs' Complaint, "Negligent Procurement of Insurance," Plaintiffs aver:

> 12.    Defendants SPEAR and STATE FARM undertook a duty to fairly and adequately procure insurance on behalf of the plaintiffs. This duty was breached and as a result the plaintiffs have been damaged.

(Plaintiffs' Complaint, p. 4).  However, in ¶ 5 of Plaintiffs' First Amended Complaint, they concede that the policy of insurance procured by Spear through State Farm did in fact provide the coverage Plaintiffs sought.

> 5.    On or about August 2, 1999, Defendant SPEAR, procured for valuable consideration, a policy of homeowners insurance for plaintiffs for their real property located at 1071 County Road 267,

2

> LaFayette, AL 36862-3517. Defendant, STATE FARM, wrote said
> policy of insurance. ***Said policy*** of insurance ***provided coverage*** for
> the "dwelling" and "personal property" ***for wind damage***."

(Plaintiffs' First Amended Complaint, p. 1 (emphasis added)). Plaintiffs further admit that "pursuant to the terms and conditions of plaintiffs' contract, wind damage is a covered peril. (Plaintiffs' Complaint, ¶ 8, p.3).

In *Rutley v. Country Skillet Poultry Co.*, 549 So.2d 82 (Ala.1989), the court held that a claim for negligently failing to provide insurance coverage would still be governed by the elements necessary to prove an ordinary claim of negligence, said elements being "(1) a duty to a foreseeable plaintiff, (2) a breach of that duty, (3) proximate cause, and (4) injury/damage." *Id.* at 85. The existence of a duty to a plaintiff is fundamental to any claim of negligence. *Patrick v. Union State Bank*, 681 So. 2d 1364, 1367 (Ala. 1996). Whether there is a duty to the Plaintiff is the threshold inquiry. *Ledbetter v. United American Ins. Co.*, 624 So. 2d 1371, 1373 (Ala. 1993). The existence of a duty is a question of law to be determined by a trial judge. *State Farm Fire and Casualty Company v. Owen*, 729 So. 2d 834, 839 (Ala. 1999).

Plaintiffs' claim for negligent procurement is based on their allegations that the policy which was provided by State Farm did not provide coverage for their dwelling and personal property for damage caused by wind. However, by Plaintiffs' own admission and as evidenced by the policy itself, Plaintiffs' policy does in fact provide coverage for wind damage. The basis of this suit, rather, appears to be Plaintiffs' dissatisfaction with the benefits paid pursuant to their wind claim. Said dispute is articulated in Counts I and II of Plaintiffs' Complaint alleging breach of contract and bad faith against State Farm. Plaintiffs make it clear throughout both their Complaint and First Amended Complaint that the impetus behind this litigation is the payments and repairs made under the policy.

3

Plaintiffs admit that State Farm has issued payments and allege the repairs made were inadequate. (Plaintiffs' Complaint, ¶ 8, p.3). By the very allegations of both their Complaint and First Amended Complaint, Plaintiffs point to no facts which would support a negligent procurement claim.

A claim for negligent procurement necessarily requires that Spear or State Farm failed to procure a policy which provided the necessary coverage. However, by Plaintiffs' own admission, there was no breach of duty to procure a policy which provided coverage for wind damage by either Defendant as Plaintiffs readily admit the policy at issue in this litigation did in fact provide coverage for wind damage. On its face, Plaintiffs' Complaint negates the requisite elements for a claim of negligent or wanton procurement due to Plaintiffs multiple admissions that the policy they purchased from State Farm through Defendant Spear *did* contain coverage for wind damage. The material facts are not in dispute and judgment in favor of Defendants State Farm and Spear as to Count III of Plaintiffs' Complaint is warranted pursuant to the holding in *Willis*.

**RESPECTFULLY SUBMITTED** this the 12th day of July, 2006.

**MICHAEL B. BEERS [BEE006]**
**CONSTANCE T. BUCKALEW [BUC015]**
**ANGELA C. TAYLOR [TAY062]**
**TANYA E. DUGAS [DUG006]**
Attorneys for Defendants State Farm Fire and
Casualty Company and Mike Spear

OF COUNSEL:
BEERS, ANDERSON, JACKSON,
 PATTY, VAN HEEST & FAWAL, P.C.
P. O. Box 1988
Montgomery, Alabama 36102-1988
(334) 834-5311
(334) 834-5362 fax

4

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of DEFENDANTS STATE FARM FIRE & CASUALTY COMPANY AND MIKE SPEAR'S MOTION FOR JUDGMENT ON THE PLEADINGS has been served upon all parties to this action by depositing a copy of same in the U.S. Mail, postage prepaid, addressed as follows:

David Hodge, Esq.
**PITTMAN, HOOKS, DUTTON, KIRBY**
 **& HELLUMS, P.C.**
1100 Park Place Tower
2001 Park Place North
Birmingham, Alabama 35203

Nick Wooten, Esq.
**WOOTEN LAW FIRM, P.C.**
P. O. Drawer 290
LaFayette, AL 35862


on this the 14ᵗʰ day of July, 2006.


OF COUNSEL

# State Farm Fire and Casualty Company®



Birmingham Operations Cente
100 State Farm Parkway
P.O. Box 2661
Birmingham, Alabama 35297-

## CERTIFICATE

I, the undersigned, do hereby certify that I am custodian of the
records pertaining to the issuance of policies issued by the
AL Personal Lines    Division of State Farm Fire and Casualty Company
of Birmingham, AL.

Based on our available records, I further certify that the attached
Coverage Summary  dated JUL 06, 2005 represents a true copy
of the policy provisions and coverages as of AUG 02, 2005 for policy
01-CZ-8163-4 issued to  HODGE, ROBERT L & THERESA
                        PO BOX 52
                        LAFAYETTE AL  36862-0052

LOCATION: 1071 COUNTY ROAD 267
          LAFAYETTE AL  36862-3517

_Bill Lovell_

Bill Lovell
Underwriting Section Manager
State Farm Fire and Casualty Company



SF- Hodge

SF-00043

STATE FARM INSURANCE COMPANIES
State Farm Fire and Casualty Company

100 State Farm Parkway
Birmingham, AL 35297-0001

B-09- 1722-F282  FT

HODGE, ROBERT L & THERESA
PO BOX 52
LAFAYETTE AL  36862-0052

**RENEWAL CERTIFICATE**

| POLICY NUMBER | 01-CZ-8163-4 |
|---|---|

Manufactured Home Special Form Policy
AUG 02 2005  to  AUG 02 2006

| DATE DUE | PLEASE PAY THIS AMOUNT |
|---|---|
| BILLED THROUGH SFPP | |

**Coverages and Limits**

**Section I**

| | | |
|---|---|---|
| A | Dwelling | $62,700 |
| | Dwelling Extension | 6,270 |
| B | Personal Property | 62,700 |
| C | Loss of Use | Actual Loss Sustained |

**Deductibles - Section I**

| All Losses | 500 |
|---|---|

Location:  1071 COUNTY ROAD 267
LAFAYETTE AL
36862-3517

SFPP No:  0377027409

Lienholder:  GREEN TREE SERVICING LLC
ITS AFFILIATES &/OR ASSIGNS

Loan No: 77434876

**Section II**

| | | |
|---|---|---|
| L | Personal Liability | $300,000 |
| | Damage to Property of Others | 500 |
| M | Medical Payments to Others (Each Person) | 5,000 |

**Forms, Options, and Endorsements**

| | |
|---|---|
| Manufactured Home Policy | FP-7933.1 |
| Earth Movement | OPT  EM |
| Jewelry and Furs $1,500/$2,500 | OPT  JF |
| Amendatory Endorsement | FE-7281.1 |
| Personal Prop Replacement Cost | FE-7522.3 |
| Fungus "Including Mold" Excl | FE-5901 |
| Motor Vehicle Endorsement | FE-5452 |
| Amend Subrogation Condition | FE-5843 |

| Annual Premium | $1,418.00 |
|---|---|

**Premium Reductions**
Your premium has already been reduced
by the following:

| Home Alert Discount | 59.00 |
|---|---|
| Renewal Discount | 148.00 |
| Stability Discount | Included |
| Age Group Discount | Included |

Inflation Coverage Index:  194.6

Description:  SUMMIT       Serial No:  H151251GL24

*Thanks for letting us serve you. We appreciate our long term customers.*

Agent  MIKE SPEAR
Telephone  (334) 864-8772

Prepared  JUL 06 2005

38 3312 0425

See reverse side for important information.
Please keep this part for your record.

**IF YOU HAVE MOVED, PLEASE CONTACT YOUR AGENT.**       B-1722-F282  F

| INSURED | HODGE, ROBERT L & THERESA | |
|---|---|---|
| POLICY NUMBER | 01-CZ-8163-4 | MANF HOME - 3 |

Loan No: 77434876

**NOTE: DO NOT PAY - PREMIUM BILLED THROUGH STATE FARM PAYMENT PLAN.**

| DATE DUE | PLEASE PAY THIS AMOUNT |
|---|---|
| | THIS IS FOR INFORMATION ONLY |

Please contact your State Farm
Agent to make any policy
changes.

0909509099
State Farm Insurance Companies

HOT OFFICE  PR ONLY    6931       401      1
Prepared  JUL 06 2005
N

| REP | FIRE REN | | | 0909 |
|---|---|---|---|---|

200525200000000  201113368163401509>

SF- Hodge

SF-00044

FP-7933.1
(11/93)

PRINTED IN U.S.A.



# YOUR
# STATE FARM
# MANUFACTURED HOME
# POLICY

SF- Hodge

SF-00245

FP-7933.1
(11/93)

# TABLE OF CONTENTS

## DECLARATIONS
Your Name
Location of Your Residence
Description of Your Manufactured Home
Policy Period
Coverages
Limits of Liability
Deductibles

**Begins on Page**

## DECLARATIONS CONTINUED                    1

## DEFINITIONS                               1

## SECTION I - YOUR PROPERTY
COVERAGES
   Coverage A - Dwelling                  3
   Coverage B - Personal Property         3
   Coverage C - Loss of Use               5
   Additional Coverages                   5
LOSSES INSURED                               7
LOSSES NOT INSURED                           9
CONDITIONS                                   11

## SECTION II - YOUR LIABILITY
COVERAGES
   Coverage L - Personal Liability        13
   Coverage M - Medical Payments to Others  14
   Additional Coverages                   14
EXCLUSIONS                                   15
CONDITIONS                                   17

## SECTION I AND SECTION II - CONDITIONS    18

## OPTIONAL POLICY PROVISIONS               19

Includes copyrighted material of State Farm Fire and Casualty Company.
Copyright, State Farm Fire and Casualty Company, 1983.

FP-7933.1
(11/93)

Printed in U.S.A.

**SF- Hodge**

SF-00046

# MANUFACTURED HOME POLICY - SPECIAL FORM 3
## DECLARATIONS CONTINUED

We agree to provide the insurance described in this policy:

1. based on your payment of premium for the coverages you chose;

2. based on your compliance with all applicable provisions of this policy; and

3. in reliance on your statements in these **Declarations**.

You agree, by acceptance of this policy, that:

1. you will pay premiums when due and comply with the provisions of this policy;

2. the statements in these **Declarations** are your statements and are true;

3. we insure you on the basis your statements are true; and

4. this policy contains all of the agreements between you and us and any of our agents.

Unless otherwise indicated in the application, you state that during the three years preceding the time of your application for this insurance your Loss History and Insurance History are as follows:

1. Loss History: you and the members of your household have not had any insured losses, whether paid or not, that would have been covered under the terms of this or a similar policy; and

2. Insurance History: no insurance company has cancelled or refused to renew your homeowners or fire insurance.

## DEFINITIONS

"You" and "your" mean the "named insured" shown in the **Declarations**. Your spouse is included if a resident of your household. "We", "us" and "our" mean the Company shown in the **Declarations**.

Certain words and phrases are defined as follows:

1. "bodily injury" means physical injury, sickness or disease to a person. This includes required care, loss of services and death resulting therefrom.

   **Bodily injury** does not include:

   a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person;

   b. the exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person; or

   c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

2. "business" means a trade, profession or occupation. This includes farming.

3. "Declarations" means the policy **Declarations**, any amended **Declarations**, the most recent renewal notice or certificate, an Evidence of Insurance form, or any endorsement changing any of these.

4. "insured" means you and, if residents of your household:

   a. your relatives; and

   b. any other person under the age of 21 who is in the care of a person described above.

   Under Section II, "insured" also means:

   c. with respect to animals or watercraft to which this policy applies, the person or organization legally responsible for them. However, the animal or watercraft must be owned by you or a person included in 4.a. or 4.b. A person or organization using or having custody of these animals or watercraft in the course of a **business**, or without permission of the owner, is not an **insured**; and

FP-7933.1
(11/93)

1

Printed in U.S.A.

**SF- Hodge**

SF-00047

d. with respect to any vehicle to which this policy applies, any person while engaged in your employment or the employment of a person included in 4.a. or 4.b.

5. "insured location" means:

a. the residence premises;

b. the part of any other premises, other structures and grounds used by you as a residence. This includes premises, structures and grounds you acquire while this policy is in effect for your use as a residence;

c. any premises used by you in connection with the premises included in 5.a. or 5.b.;

d. any part of a premises not owned by an insured but where an insured is temporarily residing;

e. vacant land owned by or rented to an insured. This does not include farm land;

f. land owned by or rented to an insured on which a one or two family dwelling is being constructed as a residence for an insured;

g. individual or family cemetery plots or burial vaults of an insured;

h. any part of a premises occasionally rented to an insured for other than business purposes; and

i. 500 acres or less of farm land (without buildings) rented to others.

6. "in transit" means the period of time during which the leveling jacks or blocks are removed or all utilities are disconnected for the purpose of transporting the dwelling from one location to another. This applies whether or not the dwelling is momentarily in motion and whether on a public roadway or otherwise. The dwelling will not be considered in transit if it is being moved as an emergency measure to protect it from an impending loss from a Loss Insured.

7. "motor vehicle", when used in Section II of this policy, means:

a. a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration. A mo-

torized land vehicle in dead storage on an insured location is not a motor vehicle;

b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration. A boat, camp, home or utility trailer not being towed by or carried on a vehicle included in 7.a. is not a motor vehicle;

c. a motorized golf cart, snowmobile, or other motorized land vehicle owned by an insured and designed for recreational use off public roads, while off an insured location. A motorized golf cart while used for golfing purposes is not a motor vehicle;

d. a motorized bicycle, tricycle or similar type of equipment owned by an insured while off an insured location; and

e. any vehicle while being towed by or carried on a vehicle included in 7.a., 7.b., 7.c. or 7.d.

8. "occurrence", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

a. bodily injury; or

b. property damage;

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence.

9. "property damage" means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by an insured is not property damage.

10. "residence employee" means an employee of an insured who performs duties, including household or domestic services, in connection with the maintenance or use of the residence premises. This includes employees who perform similar duties elsewhere for you. This does not include employees while performing duties in connection with the business of an insured.

11. "residence premises" means your dwelling, other structures, and grounds where you reside and which is shown in the Declarations.

2

SF- Hodge

SF-00048

# SECTION I - COVERAGES

## COVERAGE A - DWELLING

1. We cover:

   a. the dwelling used principally as a private residence on the **residence premises** shown in the **Declarations**. This includes structures attached to the dwelling;

   b. materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration or repair of the dwelling or other structures on the **residence premises**;

   c. wall-to-wall carpeting attached to the dwelling on the **residence premises**;

   d. outdoor antennas;

   e. parts, equipment, furniture and accessories which are originally built into and form a permanent part of the dwelling;

   f. permanently attached carports or garages, awnings, skirting, porches, tie-down equipment; and

   g. dwelling structure equipment.

   We do not cover the dwelling while it is rented. However, it is permissible to rent a portion of the dwelling which is occupied by an **insured** to not more than two roomers or boarders.

2. **Dwelling Extension.** We cover other structures on the **residence premises**, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

   We do not cover other structures:

   a. not permanently attached to or otherwise forming a part of the realty;

   b. used in whole or in part for **business** purposes; or

   c. rented or held for rental to a person not a tenant of the dwelling, unless used solely as a private garage.

3. We do not cover land, including the land necessary to support any Coverage A property. We do not cover any costs required to replace, rebuild, stabilize or otherwis restore the land, nor do we cover the costs of repa techniques designed to compensate for or prevent lan instability.

## COVERAGE B - PERSONAL PROPERTY

1. We cover personal property owned or used by an in **sured** while it is anywhere in the world. This include structures not permanently attached to or otherwise form ing a part of the realty. At your request, we will cove personal property owned by others while the property i on the part of the **residence premises** occupied exclu sively by an **insured**. At your request, we will also cove personal property owned by a guest or a **residenc employee**, while the property is in any other residenc occupied by an **insured**.

   We cover personal property usually situated at an in **sured's** residence, other than the **residence premise** for up to $1,000 or 10% of the Coverage B limit, whic ever is greater. This limitation does not apply to person property in a newly acquired principal residence for th first 30 days after you start moving the property there. I the **residence premises** is a newly acquired princip residence, personal property in your immediate pa principal residence is not subject to this limitation for th first 30 days after the inception of this policy.

   **Special Limits of Liability.** These limits do not increas the Coverage B limit. The special limit for each of th following categories is the total limit for each loss for property in that category:

   a. $200 on money, bank notes, bullion, gold other tha goldware, silver other than silverware, platinur coins and medals;

   b. $1,000 on property used or intended for use in **business,** including merchandise held as samples for sale or for delivery after sale, while on the **res dence premises.** This coverage is limited to $250 such property away from the **residence premises**

   Electronic data processing equipment or the recor ing or storage media used with that equipment is r included under this coverage;

3

**SF- Hodge**
SF-00049

c. $1,000 on securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps;

d. $1,000 on watercraft of all types and outboard motors, including their trailers, furnishings and equipment;

e. $1,000 on trailers not used with watercraft;

f. $1,000 for loss by theft of jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones;

g. $2,500 for loss by theft of firearms;

h. $2,500 for loss by theft of silverware and goldware;

i. $5,000 on electronic data processing equipment and the recording or storage media used with that equipment. There is no coverage for said equipment or media while located away from the **residence premises** except when said equipment or media are removed from the **residence premises** for the purpose of repair, servicing or temporary use. An **insured** student's equipment and media are covered while at a residence away from home; and

j. $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article.

2. **Property Not Covered.** We do not cover:

a. articles separately described and specifically insured in this or any other insurance;

b. animals, birds or fish;

c. any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. We do cover those not licensed for use on public highways which are:

(1) used solely to service the **insured location**; or

(2) designed for assisting the handicapped;

d. devices or instruments for the recording or reproduction of sound permanently installed in an engine or motor propelled vehicle. We do not cover tapes, wires, records or other mediums that may be used with these devices or instruments while in the vehicle;

e. aircraft and parts;

f. property of roomers, boarders, tenants and other residents not related to an **insured**. We do cover property of roomers, boarders and other residents related to an **insured**;

g. property regularly rented or held for rental to others by an **insured**. This exclusion does not apply to property of an **insured** in a sleeping room rented to others by an **insured**;

h. property rented or held for rental to others away from the **residence premises**;

i. any citizens band radios, radio telephones, radio transceivers, radio transmitters, radar detectors, antennas and other similar equipment. This exclusion applies only while the property is located in or upon an engine or motor propelled vehicle, whether attached or not;

j. books of account, abstracts, drawings, card index systems and other records. This exclusion does not apply to film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing. We will cover the cost of blank books, cards or other blank material plus the cost of labor you incur for transcribing or copying such records;

k. recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market;

l. appliances, equipment and accessories which are originally built into and form a permanent part of the dwelling; or

m. tires and wheels detached from the dwelling and while away from the **residence premises**.

4

**SF- Hodge**

SF-00050

## COVERAGE C - LOSS OF USE

1. **Additional Living Expense.** If a Loss Insured causes the **residence premises** to become uninhabitable, we cover the necessary increase in cost to maintain your standard of living. Payment is for the shortest time required (a) to repair or replace the premises or (b) for your household to settle elsewhere, but not to exceed 12 months. This period of time is not limited by expiration of this policy.

2. **Fair Rental Value.** If a Loss Insured causes that part of the **residence premises** rented to others or held for rental by you to become uninhabitable, we cover its fair rental value. Payment shall be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by expiration of this policy. Fair rental value shall not include any expense that does not continue while that part of the **residence premises** rented or held for rental is uninhabitable.

3. **Prohibited Use.** If a civil authority prohibits your use of the **residence premises** because of direct damage to a neighboring premises caused by a Loss Insured, we cover any resulting Additional Living Expense and Fair Rental Value. Coverage is for a period not exceeding two weeks while use is prohibited.

    We do not cover loss or expense due to cancellation of a lease or agreement.

## SECTION I - ADDITIONAL COVERAGES

1. **Debris Removal.** We will pay the reasonable expenses you incur in the removal of debris of covered property damaged by a Loss Insured. This expense is included in the limit applying to the damaged property.

    We will pay up to $500 in the aggregate for each loss to cover the reasonable expenses you incur in the removal of tree debris from the **residence premises** when the tree has damaged property covered under Coverage A.

    When the amount payable for the property damage plus the debris removal exceeds the limit for the damaged property, an additional 5% of that limit is available for debris removal expense.

2. **Temporary Repairs.** If damage is caused by a Loss Insured, we will pay the reasonable and necessary cost you incur for temporary repairs to covered property to protect the property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

3. **Trees, Shrubs and Other Plants.** We cover outdoor trees, shrubs, plants or lawns, on the **residence premises**, for loss caused by the following: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the **residence premises**, Vandalism or malicious mischief or Theft. The limit for this coverage, including the removal of debris, shall not exceed 5% of the limit applying to the dwelling. We will not pay more than $500 for any one outdoor tree, shrub or plant, including debris removal expense. This coverage may increase the limit otherwise applicable. We do not cover property grown for **business** purposes.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges. This means charges incurred when the fire department is called to save or protect covered property from a Loss Insured. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5. **Property Removed.** Covered property, while being removed from a premises endangered by a Loss Insured, is covered for any accidental direct physical loss. This coverage also applies to the property for up to 30 days while removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

6. **Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money.**

    a.  We will pay up to $1,000 for:

        (1) the legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an **insured's** name. If an **insured** has not complied with all terms and conditions under

5

SF- Hodge

SF-00051

which the cards are issued, we do not cover use by an **insured** or anyone else;

(2) loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; and

(3) loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

No deductible applies to this coverage.

We will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

b. We do not cover loss arising out of **business** pursuits or dishonesty of an **insured**.

c. Defense:

(1) We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend claims or suits ends when the amount we pay for the loss equals our limit of liability.

(2) If claim is made or a suit is brought against an **insured** for liability under the Credit Card or Bank Fund Transfer Card coverage, we will provide a defense. This defense is at our expense by counsel of our choice.

(3) We have the option to defend at our expense an **insured** or an **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Power Interruption.** We cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the **residence premises**. The power interruption must be caused by a Loss Insured occurring on the **residence premises**. The power lines off the **residence premises** must remain energized. This coverage does not increase the limit applying to the damaged property.

8. **Refrigerated Products.** Coverage B is extended to cover the contents of deep freeze or refrigerated units on the **residence premises** for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to you, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure shall not include:

a. removal of a plug from an electrical outlet; or

b. turning off an electrical switch unless caused by a Loss Insured.

This coverage does not increase the limit applying to the damaged property.

9. **Arson Reward.** We will pay $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit shall not be increased regardless of the number of persons providing information.

10. **Volcanic Action.** We cover direct physical loss to a covered building or covered property contained in a building resulting from the eruption of a volcano when the loss is directly and immediately caused by:

a. volcanic blast or airborne shock waves;

b. ash, dust or particulate matter; or

c. lava flow.

We will also pay for the removal of that ash, dust or particulate matter which has caused direct physical loss to a covered building or covered property contained in a building.

One or more volcanic eruptions that occur within a 72-hour period shall be considered one volcanic eruption.

This coverage does not increase the limits applying to the damaged property.

11. **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

a. perils described in SECTION I - LOSSES INSURED, COVERAGE B - PERSONAL PROPERTY. These

6

**SF- Hodge**
SF-00052

perils apply to covered building and personal property for loss insured by this Additional Coverage;

b.  hidden decay;

c.  hidden insect or vermin damage;

d.  weight of contents, equipment, animals or people;

e.  weight of ice, snow, sleet or rain which collects on a roof; or

f.  use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e. and f. unless the loss is a direct result of the collapse of a building.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This coverage does not increase the limit applying to the damaged property.

## COVERAGE A - DWELLING

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in SECTION I - LOSSES NOT INSURED.

## COVERAGE B - PERSONAL PROPERTY

We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in SECTION I - LOSSES NOT INSURED:

1.  **Fire or lightning.**

2.  **Windstorm or hail.** This peril does not include loss to property contained in a structure caused by rain, snow, sleet, sand or dust. This limitation does not apply when the direct force of wind or hail damages the structure causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

12.  **Locks.** We will pay the reasonable expenses you inc to re-key locks on exterior doors of the dwelling locate on the **residence premises**, when the keys to thos locks are a part of a covered theft loss.

No deductible applies to this coverage.

13.  **Temporary Living Expense Allowance.** If the res dence premises becomes uninhabitable because of loss caused by earthquake, landslide, or volcanic explo sion, or if civil authority prohibits your use of the res dence premises because an earthquake, landslide o volcanic explosion has occurred, we will pay up to $2,00 to cover the necessary increase in cost which you inc to maintain your standard of living.

The SECTION I - LOSSES NOT INSURED references t earthquake, landslide and volcanic explosion do not ap ply to this Additional Coverage.

This coverage is excess over any other valid and collec ible insurance which is in force at the time of the loss.

No deductible applies to this coverage.

## SECTION I - LOSSES INSURED

This peril includes loss to watercraft of all types, the trailers, furnishings, equipment, and outboard motors only while inside a fully enclosed building.

3.  **Explosion.**

4.  **Riot or civil commotion.**

5.  **Aircraft,** including self-propelled missiles and space craft.

6.  **Vehicles.**

7.  **Smoke,** meaning sudden and accidental damage fror smoke.

This peril does not include loss caused by smoke fror agricultural smudging or industrial operations.

7

8. **Vandalism or malicious mischief,** meaning only willful and malicious damage to or destruction of property.

9. **Theft,** including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

This peril does not include:

a. loss of a precious or semi-precious stone from its setting;

b. loss caused by theft:

   (1) committed by an **insured** or by any other person regularly residing on the **insured location.** Property of a student who is an **insured** is covered while located at a residence away from home, if the theft is committed by a person who is not an **insured;**

   (2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

   (3) from the part of a **residence premises** rented to others:

     (a) caused by a tenant, members of the tenant's household, or the tenant's employees;

     (b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins and medals;

     (c) of securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps; or

     (d) of jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones;

c. loss caused by theft that occurs away from the **residence premises** of:

   (1) property while at any other residence owned, rented to, or occupied by an **insured,** except

while an **insured** is temporarily residing there. Property of a student who is an **insured** is covered while at a residence away from home;

   (2) watercraft of all types, including their furnishings, equipment and outboard motors; or

   (3) trailers and campers designed to be pulled by or carried on a vehicle.

If the **residence premises** is a newly acquired principal residence, property in the immediate past principal residence shall not be considered property away from the **residence premises** for the first 30 days after the inception of this policy.

10. **Falling objects.** This peril does not include loss to property contained in a structure unless the roof or an exterior wall of the structure is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a structure.

12. **Sudden and accidental discharge or overflow** of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water or steam escaped;

b. caused by or resulting from freezing;

c. caused by or resulting from water from outside the plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or other type system designed to remove subsurface water which is drained from the foundation area; or

d. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

13. **Sudden and accidental tearing asunder, cracking, burning or bulging** of a steam or hot water heating

8

**SF- Hodge**

SF-00054

system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing; or

b. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the **residence premises** while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

a. maintain heat in the structure; or

b. shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage** to electrical appliances, devices, fixtures and wiring from an increase or decrease of artificially generated electrical current. We will pay up to $1,000 under this peril for each damaged item described above.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass which is a part of a structure on the **residence premises**. There is no coverage for loss or damage to the glass.

17. **Flood**, surface water, waves, tidal water, or overflow of a body of water, or spray from any of these, whether or not driven by wind.

## SECTION I - LOSSES NOT INSURED

1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a. collapse, except as specifically provided in SECTION I - ADDITIONAL COVERAGES, Collapse;

b. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion only applies while the dwelling is vacant, unoccupied or being constructed. This exclusion does not apply if you have used reasonable care to:

(1) maintain heat in the dwelling; or

(2) shut off the water supply and drain the system and appliances of water;

c. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a fence, pavement,

patio, swimming pool, foundation, retaining wall, bulkhead, pier, wharf or dock;

d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied;

e. vandalism and malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

f. continuous or repeated seepage or leakage of water or steam from a:

(1) heating, air conditioning or automatic fire protective sprinkler system;

(2) household appliance; or

(3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot. If loss to covered property is caused by water

9

**SF- Hodge**
SF-00055

steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the structure necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped;

g.  wear, tear, marring, scratching, deterioration, inherent vice, latent defect and mechanical breakdown;

h.  corrosion, electrolysis, or rust;

i.  mold, or wet or dry rot;

j.  contamination;

k.  smog, smoke from agricultural smudging or industrial operations;

l.  settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings;

m.  birds, vermin, rodents, insects, or domestic animals. We do cover the breakage of glass or safety glazing material which is a part of a structure, when caused by birds, vermin, rodents, insects or domestic animals; or

n.  seizure by a governmental authority.

However, we do insure for any resulting loss from items a. through n. unless the resulting loss is itself a Loss Not Insured by this Section.

2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a.  **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair, demolition, sale, occupancy or placement of a dwelling or other structure, unless specifically provided under this policy.

b.  **Earth Movement,** meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, sinkhole, subsidence and erosion. Earth movement also includes volcanic explosion or lava flow, except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Volcanic Action.**

We do insure for any direct loss by fire, explosion other than explosion of a volcano, theft, or breakage of glass or safety glazing materials which are part of the dwelling resulting from earth movement, provided the resulting loss is itself a Loss Insured.

c.  **Water Damage,** meaning:

(1) water from outside the plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

(2) natural water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

However, we do insure for any direct loss by fire, explosion or theft resulting from water damage, provided the resulting loss is itself a Loss Insured.

d.  **Neglect,** meaning neglect of the insured to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e.  **War,** including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

f.  **Nuclear Hazard,** meaning any nuclear reaction, radiation, or radioactive contamination, all whether con-

10

**SF- Hodge**

SF-00056

trolled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion or smoke. However, we do insure for direct loss by fire resulting from the nuclear hazard.

g. **Conversion, Embezzlement or Secretion** by the selling dealer or by any person in lawful possession or custody of the insured property.

h. Any Loss Insured other than fire while the dwelling is **in transit.**

i. Any Loss Insured while the dwelling is at any location not described in this policy. This exclusion does not apply if you or someone on your behalf has notified us or our agent of the move within 60 days from the start of the move.

3. We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to

or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault; or

b. defect, weakness, inadequacy, fault or unsoundness in:

(1) planning, zoning, development, surveying, siting;

(2) design, specifications, workmanship, construction, grading, compaction;

(3) materials used in construction or repair; or

(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises.**

However, we do insure for any resulting loss from items a. and b. unless the resulting loss is itself a Loss Not Insured by this Section.

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we shall not be liable:

a. to the **insured** for an amount greater than the **insured's** interest; or

b. for more than the applicable limit of liability.

2. **Your Duties After Loss.** After a loss to which this insurance may apply, you shall see that the following duties are performed:

a. give immediate notice to us or our agent. Also notify the police if the loss is caused by theft. Also notify the credit card company or bank if the loss involves a credit card or bank fund transfer card;

b. protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property, keep an accurate record of repair expenditures;

c. prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, actual cash value and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

d. as often as we reasonably require:

(1) exhibit the damaged property;

(2) provide us with records and documents we request and permit us to make copies;

(3) submit to and subscribe, while not in the presence of any other **insured:**

(a) statements; and

(b) examinations under oath; and

(4) produce employees, members of the **insured's** household or others for examination under oath

11

**SF- Hodge**

SF-00057

to the extent it is within the **insured's** power to do so; and

e. submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1) the time and cause of loss;

(2) interest of the **insured** and all others in the property involved and all encumbrances on the property;

(3) other insurance which may cover the loss;

(4) changes in title or occupancy of the property during the term of this policy;

(5) specifications of any damaged structure and detailed estimates for repair of the damage;

(6) an inventory of damaged or stolen personal property described in 2.c.;

(7) receipts for additional living expenses incurred and records supporting the fair rental value loss;

(8) evidence or affidavit supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss Settlement**. Covered property losses are settled at actual cash value at the time of loss. This means there may be deduction for depreciation.

We will not pay an amount exceeding:

a. that necessary to repair or replace;

b. any special limit of liability described in the policy; or

c. any applicable Coverage A or Coverage B limit of liability.

4. **Loss to a Pair or Set**. In case of loss to a pair or set, we may elect to:

a. repair or replace any part to restore the pair or set to its value before the loss; or

b. pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement**. Loss for damage to glass caused by a Loss Insured shall be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal**. If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

7. **Other Insurance**. If a loss covered by this policy is also covered by other insurance, we will pay only our share of the loss. Our share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us**. No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

9. **Our Option**. We may repair or replace any part of the property damaged or stolen with equivalent property. Any property we pay for or replace becomes our property.

12

**SF- Hodge**

SF-00058

10. **Loss Payment**. We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

   a.  reach agreement with you;

   b.  there is an entry of a final judgment; or

   c.  there is a filing of an appraisal award with us.

11. **Abandonment of Property**. We need not accept any property abandoned by an **insured**.

12. **Lienholder Clause**. The word "lienholder" includes trustee.

   a.  If a lienholder is named in this policy, any loss payable under Coverage A shall be paid to the lienholder and you, as interests appear. If more than one lienholder is named, the order of payment shall be the same as the order of precedence of the liens.

   b.  If we deny your claim, that denial shall not apply to a valid claim of the lienholder, if the lienholder:

     (1)  notifies us of any change in ownership, occupancy or substantial change in risk of which the lienholder is aware, provided that conversion, embezzlement or secretion by an **insured** having possession of the dwelling is not covered under Section I of this policy;

     (2)  pays any premium due under this policy on demand if you have neglected to pay the premium; or

     (3)  submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the lienholder.

## COVERAGE L - PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

   c.  If this policy is cancelled by us, the lienholder shall be notified at least 10 days before the date cancellation takes effect.

   d.  If we pay the lienholder for any loss and deny payment to you:

     (1)  we are subrogated to all the rights of the lienholder granted under the lien on the property; or

     (2)  at our option, we may pay to the lienholder the whole principal on the lien plus any accrued interest. In this event, we shall receive a full assignment and transfer of the lien and all securities held as collateral to the lien debt.

   e.  Subrogation shall not impair the right of the lienholder to recover the full amount of the lienholder's claim.

13. **No Benefit to Bailee**. We will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing or transporting property for a fee. This applies regardless of any other provision of this policy.

14. **Intentional Acts**. If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other **insured** for this loss.

15. **Replacement of Dwelling**. If you replace your dwelling we will provide coverage on the replacement. This condition applies only if you notify us within 60 days after delivery of the replacement and pay any additional premium required.

16. **Protection of Insured Property**. When insured property is endangered by a Loss Insured, you shall use all reasonable means to protect the property from loss or further loss.

## SECTION II - LIABILITY COVERAGES

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation

13

**SF- Hodge**

SF-00059

to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

## COVERAGE M - MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage applies only:

1. to a person on the **insured location** with the permission of an **insured**;

2. to a person off the **insured location**, if the **bodily injury**:

   a. arises out of a condition on the **insured location** or the ways immediately adjoining;

   b. is caused by the activities of an **insured**;

   c. is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured**; or

   d. is caused by an animal owned by or in the care of an **insured**; or

3. to a **residence employee** if the **occurrence** causing **bodily injury** occurs off the **insured location** and arises out of or in the course of the **residence employee's** employment by an **insured**.

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

   a. expenses we incur and costs taxed against an **insured** in suits we defend;

   b. premiums on bonds required in suits we defend, but not for bond amounts greater than the Coverage L limit. We are not obligated to apply for or furnish any bond;

   c. reasonable expenses an **insured** incurs at our request. This includes actual loss of earnings (but not loss of other income) up to $100 per day for aiding us in the investigation or defense of claims or suits;

   d. prejudgment interest awarded against the **insured** on that part of the judgment we pay; and

   e. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. We will not pay for first aid to you or any other **insured**.

3. **Damage to Property of Others.**

   a. We will pay for **property damage** to property of others caused by an **insured**.

   b. Losses will be settled at actual cash value at the time of loss. This means there may be deduction for depreciation.

   We will not pay an amount exceeding:

   (1) that necessary to repair or replace the damaged or lost property; or

   (2) $500 in any one **occurrence**.

   c. We will not pay for **property damage**:

   (1) if insurance is otherwise provided in this policy;

   (2) caused intentionally by an **insured** who is 13 years of age or older;

   (3) to property, other than a rented golf cart, owned by or rented to an **insured**, a tenant of an **insured**, or a resident in your household; or

   (4) arising out of:

   (a) **business** pursuits;

   (b) any act or omission in connection with a premises an **insured** owns, rents or controls, other than the **insured location**; or

   (c) the ownership, maintenance, or use of a **motor vehicle**, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sailboard or similar type watercraft.

14

**SF- Hodge**

SF-00060

## SECTION II - EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

a. **bodily injury** or **property damage**:

   (1) which is either expected or intended by an **insured**; or

   (2) to any person or property which is the result of willful and malicious acts of an **insured**;

b. **bodily injury** or **property damage** arising out of **business pursuits** of any **insured** or the rental or holding for rental of any part of any premises by any **insured**. This exclusion does not apply:

   (1) to activities which are ordinarily incident to non-**business** pursuits;

   (2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

   (3) to the rental or holding for rental of a residence of yours:

     (a) on an occasional basis for the exclusive use as a residence;

     (b) in part, unless intended for use as a residence by more than two roomers or boarders; or

     (c) in part, as an office, school, studio or private garage; or

   (4) to farm land (without buildings) not in excess of 500 acres, rented or held for rental to others;

c. **bodily injury** or **property damage** arising out of the rendering or failing to render professional services;

d. **bodily injury** or **property damage** arising out of any premises owned or rented to any **insured** which is not an **insured location**. This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**;

e. **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading or unloading of:

   (1) an aircraft;

   (2) a **motor vehicle** owned or operated by or rented or loaned to any **insured**; or

   (3) a watercraft:

     (a) owned by or rented to any **insured** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

     (b) owned by or rented to any **insured** if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

     (c) powered by one or more outboard motors with more than 25 total horsepower owned by any **insured**;

     (d) designated as an airboat, air cushion, or similar type of craft; or

     (e) owned by any **insured** which is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**. Exclusion e.(3) does not apply while the watercraft is on the **residence premises**;

f. **bodily injury** or **property damage** arising out of:

   (1) the entrustment by any **insured** to any person;

   (2) the supervision by any **insured** of any person;

   (3) any liability statutorily imposed on any **insured**; or

   (4) any liability assumed through an unwritten or written agreement by any **insured**;

with regard to the ownership, maintenance or use of any aircraft, watercraft, or **motor vehicle** (or any

15

**SF- Hodge**

SF-00061

other motorized land conveyance) which is not covered under Section II of this policy;

g. **bodily injury** or **property damage** caused directly or indirectly by war, including undeclared war, or any warlike act including destruction or seizure or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental;

h. **bodily injury** to you or any **insured** within the meaning of part a. or b. of the definition of **insured**.

This exclusion also applies to any claim made or suit brought against any **insured** to share damages with or repay someone else who may be obligated to pay damages because of the **bodily injury**;

i. any claim made or suit brought against any **insured** by:

   (1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

   (a) any **insured**;

   (b) any employee of any **insured**; or

   (c) any other person actually or apparently acting on behalf of any **insured**; or

   (2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

   (a) any **insured**;

   (b) any employee of any **insured**; or

   (c) any other person actually or apparently acting on behalf of any **insured**.

   This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age; or

j. **bodily injury** or **property damage** arising out of an **insured's** participation in, or preparation or practice for any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power.

2. Coverage L does not apply to:

a. liability:

   (1) for your share of any loss assessment charged against all members of an association of property owners; or

   (2) assumed under any unwritten contract or agreement, or by contract or agreement in connection with a **business** of the **insured**;

b. **property damage** to property owned by any **insured**;

c. **property damage** to property rented to, occupied or used by or in the care of any **insured**. This exclusion does not apply to **property damage** caused by fire, smoke or explosion;

d. **bodily injury** to a person eligible to receive any benefits required to be provided or voluntarily provided by an **insured** under a workers' compensation, non-occupational disability, or occupational disease law;

e. **bodily injury** or **property damage** for which an **insured** under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors.

3. Coverage M does not apply to **bodily injury**:

a. to a **residence employee** if it occurs off the **insured location** and does not arise out of or in the course of the **residence employee's** employment by an **insured**;

16

**SF- Hodge**

SF-00062

b. to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability or occupational disease law;

c. from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

d. to a person other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**.

## SECTION II - CONDITIONS

1. **Limit of Liability.** The Coverage L limit is shown in the **Declarations**. This is our limit for all damages from each **occurrence** regardless of the number of **insureds**, claims made or persons injured.

   The Coverage M limit is shown in the **Declarations**. This is our limit for all medical expense for **bodily injury** to one person as the result of one accident.

2. **Severability of Insurance.** This insurance applies separately to each **insured**. This condition shall not increase our limit of liability for any one **occurrence**.

3. **Duties After Loss.** In case of an accident or **occurrence**, the **insured** shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:

   a. give written notice to us or our agent as soon as practicable, which sets forth:

      (1) the identity of this policy and **insured**;

      (2) reasonably available information on the time, place and circumstances of the accident or **occurrence**; and

      (3) names and addresses of any claimants and available witnesses;

   b. immediately forward to us every notice, demand, summons or other process relating to the accident or **occurrence**;

   c. at our request, assist in:

      (1) making settlement;

      (2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an **insured**;

      (3) the conduct of suits and attend hearings and trials; and

      (4) securing and giving evidence and obtaining the attendance of witnesses;

   d. under the coverage - **Damage to Property of Others**:

      (1) submit a sworn statement of loss to us within 60 days after the loss; and

      (2) exhibit the damaged property if within the **insured's** control; and

   e. the **insured** shall not, except at the **insured's** own cost, voluntarily make payments, assume obligations or incur expenses. This does not apply to expense for first aid to others at the time of the **bodily injury**.

4. **Duties of an Injured Person - Coverage M.** The injured person, or, when appropriate, someone acting on behalf of that person, shall:

   a. give us written proof of claim, under oath if required, as soon as practicable;

   b. execute authorization to allow us to obtain copies of medical reports and records; and

   c. submit to physical examination by a physician selected by us when and as often as we reasonably require.

5. **Payment of Claim - Coverage M.** Payment under this coverage is not an admission of liability by an **insured** or us.

6. **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

17

**SF- Hodge**

SF-00063

No one shall have the right to join us as a party to an action against an **insured**. Further, no action with respect to Coverage L shall be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an **insured** shall not relieve us of our obligation under this policy.

8. **Other Insurance - Coverage L.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION I AND SECTION II - CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I, or **bodily injury** or **property damage** under Section II which occurs during the period this policy is in effect.

2. **Concealment or Fraud.** This policy is void as to you and any other **insured**, if you or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

3. **Liberalization Clause.** If we adopt any revision which would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights.

5. **Cancellation.**

   a. You may cancel this policy at any time by notifying us in writing of the date cancellation is to take effect. We may waive the requirement that the notice be in writing by confirming the date and time of cancellation to you in writing.

   b. We may cancel this policy only for the reasons stated in this condition. We will notify you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the **Declarations.** Proof of mailing shall be sufficient proof of notice:

   (1) When you have not paid the premium, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to us or our agent or under any finance or credit plan.

   (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason. We may cancel by notifying you at least 10 days before the date cancellation takes effect.

   (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

      (a) if there has been a material misrepresentation of fact which, if known to us, would have caused us not to issue this policy; or

      (b) if the risk has changed substantially since the policy was issued.

      We may cancel this policy by notifying you at least 30 days before the date cancellation takes effect.

   (4) When this policy is written for a period longer than one year, we may cancel for any reason at anniversary. We may cancel by notifying you at least 30 days before the date cancellation takes effect.

   c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When you request cancellation, the return premium will be based on our rules for such cancellation. The return premium may be less

18

**SF- Hodge**

SF-00064

than a full pro rata refund. When we cancel, the return premium will be pro rata.

d. The return premium may not be refunded with the notice of cancellation or when the policy is returned to us. In such cases, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. If we elect not to renew, a written notice will be delivered to you, or mailed to you at your mailing address shown in the **Declarations**. The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

7. **Assignment.** Assignment of this policy shall not be valid unless we give our written consent.

8. **Subrogation.** An **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **insured** shall:

a. sign and deliver all related papers;

b. cooperate with us in a reasonable manner; and

c. do nothing after a loss to prejudice such rights.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person named in the **Declarations** or the spouse, if a resident of the same household, dies:

a. we insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

b. **insured** includes:

(1) any member of your household who is an **insured** at the time of your death, but only while a resident of the **residence premises;** and

(2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

## OPTIONAL POLICY PROVISIONS

The following Optional Policy Provisions are subject to all the terms and provisions of this policy, unless otherwise indicated in the terms of the option.

Each Optional Policy Provision applies only as indicated in the **Declarations**.

**Option AI - Additional Insured.** The definition of **insured** is extended to include the person or organization named in the **Declarations** as an Additional Insured or whose name is on file with us. Coverage is with respect to:

1. Section I - Coverage A; or

2. Section II - Coverages L and M but only with respect to the **residence premises**. This coverage does not apply to **bodily injury** to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the **Declarations**.

**Option BP - Business Property.**

COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability, item b. is changed as follows:

The $1,000 limit is replaced with the amount shown in the **Declarations** for this option.

**Option BU - Business Pursuits.**

Section II - Exclusion 1.b. is modified as follows:

1. Section II coverage applies to the **business** pursuits of an **insured** who is a:

a. clerical office employee, salesperson, collector, messenger; or

19

**SF- Hodge**

SF-00065

b. teacher (except college, university and professional athletic coaches), school principal or school administrator;

while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

a. for **bodily injury** or **property damage** arising out of a **business** owned or financially controlled by the **insured** or by a partnership of which the **insured** is a partner or member;

b. for **bodily injury** or **property damage** arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

(1) architectural, engineering or industrial design services;

(2) medical, surgical, dental or other services or treatment conducive to the health of persons or animals; and

(3) beauty or barber services or treatment;

c. for **bodily injury** to a fellow employee of the **insured** injured in the course of employment; or

d. when the **insured** is a member of the faculty or teaching staff of a school or college:

(1) for **bodily injury** or **property damage** arising out of the maintenance, use, loading or unloading of:

(a) draft or saddle animals, including vehicles for use with them; or

(b) aircraft, **motor vehicles**, recreational motor vehicles or watercraft, airboats, air cushions or personal watercraft which use a water jet pump powered by an internal combustion engine as the primary source of propulsion;

owned or operated, or hired by or for the **insured** or employer of the **insured**, or used

by the **insured** for the purpose of instruction in the use thereof; or

(2) under Coverage M for **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**.

**Option EM - Earth Movement.** Section I of this policy is extended to insure against direct loss caused by Earth Movement. Earth Movement includes, but is not limited to, earthquake; volcanic eruption; landslide; mudflow; earth sinking, rising or shifting.

1. One or more earthquake shocks that occur within a 72-hour period shall constitute a single earthquake.

2. One or more volcanic eruptions that occur within a 72-hour period shall constitute a single volcanic eruption.

**Option FA - Firearms.** Firearms are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

a. mechanical breakdown, wear and tear, gradual deterioration;

b. insects or vermin;

c. any process of refinishing, renovating, or repairing;

d. dampness of atmosphere or extremes of temperatures;

e. inherent defect or faulty manufacture;

f. rust, fouling or explosion of firearms;

g. breakage, marring, scratching, tearing or denting unless caused by fire, thieves or accidents to conveyances; or

h. infidelity of an **insured's** employees or persons to whom the insured property may be entrusted or rented;

20

**SF- Hodge**

SF-00066

2. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the **Declarations**.

**Option HC - Home Computer.** The Section I - Special Limits of Liability for electronic data processing equipment and the recording or storage media used with that equipment is increased to be the amount shown on the **Declarations** for this option.

**Option IO - Incidental Business.** The coverage provided by this option applies only to that incidental **business** occupancy on file with us.

1. Section I: COVERAGE B - PERSONAL PROPERTY is extended to include equipment, supplies and furnishings usual and incidental to this **business** occupancy. This Optional Policy Provision does not include electronic data processing equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

   The Option IO limits are shown in the **Declarations**. The first limit applies to property on the **residence premises**. The second limit applies to property while off the **residence premises**. These limits are in addition to the Section I, **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability** on property used or intended for use in a **business**.

2. Section II: The **residence premises** is not considered **business** property because an **insured** occupies a part of it as an incidental **business**.

3. Section II: Exclusion 1.b. of Coverage L and Coverage M is replaced with the following:

   b. **bodily injury** or **property damage** arising out of **business** pursuits of an **insured** or the rental or holding for rental of any part of any premises by an **insured**. This exclusion does not apply:

(1) to activities which are ordinarily incidental to non-**business** pursuits or to **business** pursuits of an **insured** which are necessary or incidental to the use of the **residence premises** as an incidental **business**;

(2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

(3) to the rental or holding for rental of a residence of yours:

   (a) on an occasional basis for exclusive use as a residence;

   (b) in part, unless intended for use as a residence by more than two roomers or boarders; or

   (c) in part, as an incidental **business** or private garage;

(4) to farm land (without buildings) not in excess of 500 acres, rented or held for rental to others.

4. This insurance does not apply to:

   a. **bodily injury** to an employee of an **insured** arising out of the **residence premises** as an incidental **business** other than to a **residence employee** while engaged in the employee's employment by an **insured**;

   b. **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**;

   c. liability arising out of any acts, errors or omissions of an **insured**, or any other person for whose acts an **insured** is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections or engineering services in the conduct of an **insured's** incidental **business** involving data processing, computer consulting or computer programming; or

   d. any claim made or suit brought against any **insured** by:

21

**SF- Hodge**

SF-00067

(1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

    (a) any **insured**;

    (b) any employee of any **insured**; or

    (c) any other person actually or apparently acting on behalf of any **insured**; or

(2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

    (a) any **insured**;

    (b) any employee of any **insured**; or

    (c) any other person actually or apparently acting on behalf of any **insured**.

Coverage M does not apply to any person indicated in (1) and (2) above.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age.

**Option JF - Jewelry and Furs.** Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware and platinum are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

    a. mechanical breakdown; wear and tear; gradual deterioration;

    b. insects or vermin;

    c. inherent vice; or

    d. seizure or destruction under quarantine or customs regulations;

2. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the **Declarations**.

**Option SG - Silverware and Goldware Theft.** The theft limit on silverware and goldware is increased to be the amount shown in the **Declarations** for this option.

    IN WITNESS WHEREOF, this Company has executed and attested these presents; but this policy shall not be valid unless countersigned by the duly authorized Agent of this Company at the agency hereinbefore mentioned.

*Laura P. Sullivan*

Secretary

*Edward B Rust, Jr*

President

The Board of Directors, in accordance with Article VI(c) of this Company's Articles of Incorporation, may from time to time distribute equitably to the holders of the participating policies issued by said Company such sums out of its earnings as in its judgment are proper.

22

**SF- Hodge**

SF-00068

## AMENDATORY ENDORSEMENT
### (Alabama)

**SECTION I - CONDITIONS**

**Suit Against Us:** Reference to "one year" is changed to "six years".

All other policy provisions apply.

Printed in U.S.A.

SF- Hodge
SF-00069

## DWELLING AND PERSONAL PROPERTY INFLATION AND
## PERSONAL PROPERTY REPLACEMENT COST ENDORSEMENT

**SECTION I - COVERAGES:** The following is added:

**INFLATION COVERAGE: DWELLING AND PERSONAL PROPERTY**

The limits of liability shown in the **Declarations** for Coverages A and B will be increased at the same rate as the increase in the Inflation Coverage Index shown in the **Declarations**.

To find the limits on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limits of liability for Coverages A and B separately.

The limits of liability will not be reduced to less than the amounts shown in the **Declarations**.

If during the term of this policy the Coverage A limit of liability is changed at your request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

**SECTION I - CONDITIONS, item 3. Loss Settlement** is replaced with the following:

3. **Loss Settlement.**

   a. We will pay actual cash value at the time of loss for:

      (1) fences;

(2) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

(3) articles whose age or history contribute substantially to their value including, but not limited to memorabilia, souvenirs and collectors items; and

(4) property not useful for its intended purpose.

However, we will not pay an amount exceeding the applicable limit of liability or an amount exceeding that necessary to repair or replace the property.

   b. We will pay the cost to repair or replace:

      (1) other personal property and other structures (except fences) that are not buildings under **Dwelling Extension**; and

      (2) carpeting, domestic appliances, awnings and outdoor antennas, whether or not attached to buildings; subject to the following:

         (a) loss to property not repaired or replaced within one year after the loss

FE-7522.3
(3/98)

(CONTINUED ON REVERSE SIDE)

Printed in U.S.A

**SF- Hodge**

SF-00070

will be settled on an actual cash value basis; and

(b) we will not pay an amount exceeding the smallest of the following:

i. replacement cost at the time of loss;

ii. the full cost of repair;

iii. any special limit of liability described in the policy; or

iv. any applicable Coverage A or Coverage B limit of liability.

c. We will pay actual cash value at the time of loss for other covered property losses. This means there may be deduction for depreciation. We will not pay an amount exceeding:

(1) that necessary to repair or replace;

(2) any special limit of liability described in the policy; or

(3) any applicable Coverage A or Coverage B limit of liability.

All other policy provisions apply.

**SF- Hodge**

SF-00071

FE-5901

# FUNGUS (INCLUDING MOLD) EXCLUSION ENDORSEMENT

## DEFINITIONS

The following definition is added:

"**fungus**" means any type or form of fungi, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

## SECTION I - LOSSES INSURED

Item 12.d. is replaced by the following:

d. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, or wet or dry rot.

Item 13.b. is replaced by the following:

b. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, or wet or dry rot.

## SECTION I - LOSSES NOT INSURED

Item 1.i. is replaced by the following:

i. wet or dry rot;

In item 2., the following is added as item j.:

j. **Fungus**, including the growth, proliferation, spread or presence of **fungus**, and including:

(1) any loss of use or delay in rebuilding, repairing or replacing covered property, including any associated cost or expense, due to interference at the described premises or location of the rebuilding, repair or replacement of that property, by **fungus**;

(2) any remediation of **fungus**, including the cost or expense to:

(a) remove or clean the **fungus** from covered property or to repair, restore or replace that property;

(b) tear out and replace any part of the building or other property as needed to gain access to the **fungus**;

(c) contain, treat, detoxify, neutralize or dispose of or in any way respond to or assess the effects of the **fungus**; or

(d) remove any property to protect it from the presence of or exposure to **fungus**;

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of **fungus**, whether performed prior to, during or after removal, repair, restoration or replacement of covered property.

All other policy provisions apply.

FE-5901

SF- Hodge
SF-00072

# MOTOR VEHICLE ENDORSEMENT

## DEFINITIONS

The definition of **"motor vehicle"** is replaced by the following:

"**motor vehicle**", when used in Section II of this policy, means:

a. a land motor vehicle designed for travel on public roads or subject to motor vehicle registration;

b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration;

c. a "recreational vehicle" while off an **insured location**. "Recreational vehicle", means a motorized vehicle designed for recreation principally off public roads that is owned or leased by an **insured**. This includes, but is not limited to, a motorized all terrain vehicle, amphibious vehicle, dune buggy, go-cart, golf cart, snowmobile, trailbike, minibike and personal assistive mobility device;

d. a "locomotive" while off an **insured location**. "Locomotive" means a self-propelled vehicle for pulling or pushing freight or passenger cars on tracks that is large enough to carry a person and is owned or leased by an **insured**;

e. a bulldozer, track loader, backhoe, high-hoe, trencher, grader, crane, self-propelled scraper, excavator, pipe-layer, cherry picker, telehandler, logging vehicle, mining vehicle or road building vehicle that is owned or leased by an **insured** while off an **insured location**;

f. any vehicle while being towed or pushed by or carried on a vehicle included in a., b., c., d. or e.;

g. the following are not **motor vehicles**:

(1) a motorized land vehicle in dead storage on an **insured location**;

(2) a boat, camp, home or utility trailer not being towed or pushed by or carried on a vehicle included in a., b., c., d. or e.;

(3) a motorized golf cart while used for golfing purposes;

(4) a motorized vehicle or trailer designed to assist the handicapped that is not designed for travel on public roads or subject to motor vehicle registration;

h. "leased" does not include temporary rental.

All other policy provisions apply.

FE-5452

SF- Hodge
SF-00073

FE-5843

# AMENDATORY SUBROGATION CONDITION ENDORSEMENT

**SECTION I AND SECTION II - CONDITIONS**

**Subrogation** is replaced with the following:

a.  If any **insured** to or for whom we make payment under this policy has rights to recover damages from another, those rights are automatically transferred to us to the extent of our payment. We are subrogated to the full extent of our payment and our rights are not dependent on whether that **insured** is fully compensated for their loss or is made whole. The application of a deductible under this policy shall not prevent any **insured** from being considered fully compensated or made whole.

b.  If any **insured** to or for whom we have made payment has not recovered from any party liable for the damages, that **insured** shall:

    1)  take no action after a loss prejudicing our rights under this contract;

    2)  keep these rights in trust for us;

FE-5843

    3)  sign and deliver any legal papers we need;

    4)  when we ask, take action through our representative to recover our payments;

    5)  cooperate with us in a reasonable manner.

c.  If any **insured** to or for whom we have made payment recovers from any other party liable for the damages:

    1)  that **insured** shall hold in trust for us the proceeds of the recovery; and

    2)  that **insured** shall reimburse us to the extent of our payment.

d.  Any **insured** may waive in writing before a loss all rights of recovery against any person.

**Subrogation** does not apply under **SECTION II** to **MEDICAL PAYMENTS TO OTHERS** or **Damage to Property of Others**.

SF- Hodge   SF-00074

IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

ROBERT and TERESA HODGE,          )
                                  )
                Plaintiffs,       )
                                  )
vs.                               )          CIVIL ACTION NO. CV-06-93
                                  )
STATE FARM FIRE & CASUALTY        )
COMPANY, et al.,                  )
                                  )
                Defendants.       )

## PLAINTIFFS' MEMORANDUM BRIEF IN OPPOSITION TO THE DEFENDANTS' JOINT MOTION FOR JUDGMENT ON THE PLEADINGS

Robert and Teresa Hodge offer this memorandum brief in opposition to the motion for judgment on the pleadings jointly filed by State Farm Fire & Casualty Company ("State Farm") and Mike Spear. For the reasons stated herein, plaintiffs ask this Court to deny this motion.

The defendants' joint motion is directed solely at Count III of the complaint. Defendants State Farm Fire & Casualty Company and Mike Spear's Motion for Judgment on the Pleadings at 1. Count III is entitled "Negligent Procurement of Insurance" and alleges that State Farm and Spear breached an undertaken duty to procure insurance coverage desired by the Hodges.

The Hodges would begin by observing that, "[a]lthough Rule 12(c) [of the Alabama Rules of Civil Procedure] authorizes 'any party' to employ the motion for judgment on the pleadings, it has its distinctive application only in the hands of plaintiffs," and that "[a] defendant's motion for judgment on the pleadings is merely a



EXHIBIT
B

belated Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted." Jerome A. Hoffman, <u>Alabama Civil Procedure</u> § 4.44 at 4-66 (2d ed. 2001) (footnotes omitted).  Therefore, as State Farm and Mike Spear are party-defendants, it would be more appropriate to treat their pending motion as a request for a Rule 12(b)(6)-based dismissal for failure to state a viable cause of action as opposed to a Rule 12(c)-based judgment on the pleadings.  The underlying question should be whether the Hodges should be allowed to conduct necessary discovery before there is any judicial assessment as to whether there is a factual basis to a support a jury's finding of a failure to procure desired coverage.  In their complaint, the Hodges satisfied their burden of pleading a viable failure-to-procure-desired-insurance-coverage cause of action against State Farm and Mike Spear that would survive a Rule 12(b)(6)-based challenge.  As this Court is fully aware, a Rule 12(b)(6)-based dismissal is rarely justified because the preference is to create a full factual record before there is any substantive ruling regarding an asserted cause of action.  <u>Radenhausen v. Doss</u>, 819 So. 2d 616, 619-20 (Ala. 2001)(citations omitted).

As stated by the Supreme Court of Alabama, "[w]hen a motion for judgment on the pleadings is made by a party, 'the trial court reviews the pleadings filed in the case and if the pleadings show that no genuine issue of material fact is presented, the trial court will enter a judgment for the party entitled to a judgment according to the law.'" <u>Universal Underwriters Ins. Co. v. Thompson</u>. 776 So. 2d 81, 82 (Ala. 2000)(quoting <u>B.K.W. Enters. Inc. v. Tractor & Equip. Co.</u>, 603 So. 2d 989, 991 (Ala. 1992)).  A Rule 12(c)-based judgment is most appropriate in a situation where, in its answer, the defendant does not deny the factual allegations in the complaint and where, based on

those factual allegations, the plaintiff would be entitled to prevail as a matter of law. In the present matter, the Hodges factually alleged that State Farm and Mike Spear failed to procure desired coverage, and the defendants have affirmatively denied this allegation and, in fact, contend that, as a matter of law, the desired coverage was provided. In the present matter, there is a genuine dispute as to a material fact.

State Farm and Mike Spear cite no Alabama opinion or an opinion from another jurisdiction wherein the defendants were granted a Rule 12(c)-based judgment or, even, a Rule 12(b)(6)-based dismissal under similar circumstances. Instead, the State Farm and Mike Spear simply argue that, if the Hodges alleged that the subject State Farm policy provided some coverage for wind damage and if the subject policy did provide some coverage for wind damage, then this Court must find that the Hodges could never prevail on Count III. State Farm and Mike Spear utterly ignore the possibility that the coverage for wind damage contained in the subject policy was not the wind-damage coverage that the Hodges desired and that State Farm and Mike Spear undertook to procure for the Hodges.

In Thompson v. United Companies Lending Corp., 699 So. 2d 169, 175 (Ala. Civ. App. 1997), a directed verdict granted the defendants with regard to a wrongful failure-to-procure-insurance claim was reversed because, while an issued policy provided some of the desired coverage, the policy did not provide the "full" coverage that the plaintiffs allegedly desired and sought. The appellate court found that genuine questions of fact existed as to the exact nature of the coverage desired by the Thompsons and as to whether the defendants undertook the duty to procure the "full" coverage allegedly desired by the Thompsons.

In the present matter, the Hodges allege that State Farm breached the issued policy with regard to the wind-damage coverage contained in the policy and additionally allege that State Farm and Mike Spear failed to procure the wind-related coverage that they desired. As to this additional allegation, the Hodges effectively contend that the wind-damage coverage in the policy does not correspond with the wind-damage coverage that they sought and that the defendants undertook to procure. This additional claim cannot be dismissed or otherwise resolved based solely on a reading of the pleadings. The Hodges' factual allegations regarding policy provisions in their complaint as amended does not bar prosecution of an additional claim that the policy did not provided the "full" wind-damage that they desired and that State Farm and Mike Spear undertook to procure.

State Farm and Mike Spear are not entitled to a Rule 12(c)-based judgment on the pleadings or a Rule 12(b)(6)-based dismissal for failure to state a claim. Instead, after germane discovery has been completed, these defendants may seek a summary judgment as to Count III. At the present time, there is no basis for dismissing Count III.

Respectfully submitted,

David J. Hodge
Of Counsel for Plaintiffs

OF COUNSEL:
PITTMAN, DUTTON, KIRBY & HELLUMS, P.C.
1100 Park Place Tower
2001 Park Place North
Birmingham, Alabama 35203
(205) 322-8880
(205) 328-2711 facsimile

# IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

ORIGINAL

| | | |
|---|---|---|
| ROBERT and THERESA HODGE,<br>    Plaintiffs, | )<br>)<br>) | |
| vs. | )<br>) | Case No. CV-06-093 |
| STATE FARM FIRE, et al,<br>    Defendants. | )<br>)<br>) | |

## <u>ORDER</u>

This matter came before the Court for hearing on Defendants Motion for Judgment on the Pleadings.  After hearing and considering argument of counsel, Defendants motion is hereby Denied.

The Clerk of the Court is to mail a copy of this Order to counsel of record and any party appearing pro se.

SIGNED this the 2nd day of October, 2006.



TOM F. YOUNG, JR.
Circuit Judge

FILED IN OFFICE THIS

**OCT  5 2006**

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

RECEIVED
OCT 0 6 2006



EXHIBIT
C